IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**PIERRE QUARAN HAMILTON,**

    **Plaintiff,**

    v.                                                                           CASE NO. 25-3125-JWL

**UNIFIED GOVERNMENT OF KANSAS
CITY, KANSAS, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

    Plaintiff and state prisoner Pierre Quaran Hamilton brings this civil rights action under 42 U.S.C. § 1983 and he was granted leave to proceed in forma pauperis. On August 25, 2025, the Court entered a memorandum and order to show cause (MOSC) explaining to Plaintiff that the statutorily required screening of the complaint in this matter revealed deficiencies that left it subject to dismissal in its entirety. (Doc. 18.) After identifying the deficiencies, the Court granted Plaintiff time in which to show cause, in writing, why this case should not be dismissed for failure to state a plausible claim for relief against a named Defendant. *See id.* at 11-13. This matter comes now before the Court on Plaintiff's response to the MOSC (Doc. 26) as well as his motion to amend or modify the amount of damages he seeks (Doc. 23) and his motion for relief from judgment (Doc. 25). For the reasons set forth below, the motions will be denied and this matter will be dismissed.

**I. Nature of the Matter before the Court**

    Plaintiff names as Defendants in this matter the Unified Government of Kansas City, Kansas ("the Unified Government"); the Wyandotte County Sheriff's Department ("WCSD"); and

WCSD Court Security Officer Leslee Nix. (Doc. 1, p. 1-3, 17.) In 2022, Lonnie Davis brought suit against Plaintiff in small claims court in the District Court of Wyandotte County, Kansas. *See Davis v. Hamilton*, Wyandotte County Case No. 2022-SC-000068. Kansas District Judge Tony Martinez presided over the small claims case. *Id.*

Plaintiff states that on October 5, 2022, he had "a complete remedy from [Judge] Martinez [and had] cash on hand to cover the amount" at issue in the small claims case. (Doc. 1, p. 2.) When Plaintiff and Mr. Davis entered the Wyandotte County courthouse that day to attend a hearing, Defendant Nix asked if they were together, to which Plaintiff replied, "Yes." (Doc. 1-1, p. 2.) Defendant Nix was aware that the men were attending an afternoon hearing in small claims court, which was located downstairs from the courthouse entrance. (Doc. 1-1, p. 1; Doc. 26, p. 7.) There were no security officers in the courtroom or immediately outside it. (Doc. 26, p. 7.)

After the hearing, Plaintiff and Mr. Davis left the courtroom at the same time. (Doc. 1-1, p. 1.) Defendant Nix, who was upstairs from the courtroom at the entrance and exit to the courthouse, was the closest court security officer to Plaintiff and Mr. Davis, but she did not proactively separate them. (Doc. 1, p. 2-3; Doc. 1-1, p. 1; Doc. 26, p. 7.) As Plaintiff and Mr. Davis began to leave the courthouse through the entrance door, Defendant Nix redirected them to the exit door. (Doc. 1-1, p. 3.) At some point, Mr. Davis said something to Plaintiff in a very low voice. (Doc. 1, p. 2.) Plaintiff asserts that Mr. Davis said, "'I'm going to kill you,'" and then intimidatingly "star[ed Plaintiff] down." (Doc. 1-1, p. 4.) Defendant Nix' report, which is attached to the complaint filed in this matter, states that she heard Mr. Davis "ma[k]e a comment in a very low voice." (Doc. 1, p. 7.) The report further recounts Plaintiff responding to the comment, punching Davis and "continu[ing] to assault [Mr.] Davis in his head." *Id.* Defendant Nix stated in

her report that she ordered Plaintiff to stop and, as she tried to draw her taser, Plaintiff left the courthouse. *Id.*

Plaintiff was arrested outside of the courthouse and the State filed criminal charges against him. (*See* Doc. 18, p. 2.) After Mr. Davis died, at least in part due to the injuries inflicted by Plaintiff, the criminal charges against Plaintiff were amended to one count of second-degree murder and one count of mistreatment of a dependent adult or elder person. *See id.* In June 2024, after the jury trial on those charges began, Plaintiff pled no contest to and was convicted of both charges and was sentenced to 154 months in prison. *Id.* at 2-3. Plaintiff pursued a direct appeal in the Kansas Court of Appeals, but on June 26, 2025, he voluntarily dismissed the appeal without filing a brief. *Id.*

In Count I of the complaint in this matter, Plaintiff asserts a violation of his Fourteenth Amendment right to Equal Protection, the improper denial of the immunity afforded him by K.S.A. 21-5231, and malicious prosecution. (Doc. 1, p. 4.) As supporting facts for Count I, Plaintiff alleges that Defendant Nix was grossly negligent because she knew that he and Mr. Davis were litigants but she did not separate them after they came out of the courtroom. (Doc. 1-1, p. 1.) Plaintiff also contends that Defendant Nix was recklessly indifferent to his federally protected right to be safe inside the courthouse. *Id.* at 1-2. He further argues that by ordering him and Mr. Davis to leave through the exit door, Defendant Nix placed them both "within [her] personal duty [and] care." *Id.* at 4. Finally, Plaintiff argues that Defendant Nix violated his statutory right to immunity under K.S.A. 21-5231 by "allowing [Plaintiff] to be arrested." *Id.* at 4-5.

In Count II, Plaintiff asserts a Fourth Amendment violation occurred when he was seized by police after the incident. (Doc. 1, p. 4.) As supporting facts for Count II, Plaintiff directs the Court's attention to reports by Defendant Nix and Officer L. Loney, the other courthouse security

officer on duty on the relevant day; the "trial Docket/complete remedy"; and the autopsy report for Mr. Davis. *Id.*; (Doc. 1-1, p. 5). Plaintiff repeats his assertion that he has a right to be safe inside a courthouse and he argues that Defendant Nix' "reckless indifference of federally protected rights of others allowed [him] to be seized when [he] clearly [and] unequivocally qualified for [immunity under] 'K.S.A. 21-5231.'" (Doc. 1-1, p. 5.) Plaintiff states that he should not have been seized, so the seizure constituted false arrest and false imprisonment. (Doc. 1, p. 4.)

In Count III, Plaintiff asserts the violation of his rights to due process and to petition the government for redress of grievances, as guaranteed by the First, Fourth, and Fourteenth Amendments. *Id.* at 5. As supporting facts for Count III, Plaintiff directs the Court to a copy of his journal entry of judgment, which he alleges violates K.S.A. 22-3439 and K.S.A. 22-3426(a) and (c). *Id.*; (Doc. 1-1, p. 5). Thus, Plaintiff contends, when the Kansas Department of Corrections took custody of him, Plaintiff's Fourth Amendment rights and his Fourteenth Amendment right to equal protection of the laws were violated. (Doc. 1-1, p. 5.) As relief, Plaintiff seeks $50,000,000.00 for pain and suffering; restitution in an amount to be determined; compensation for lost wages; his immediate release; the reversal with prejudice of his convictions; the expungement of his criminal record; and "40 acres of land within the State of Kansas regardless of City, town or county." (Doc. 1, p. 6.)

## II. Statutory Screening and the MOSC (Doc. 18)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). It must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The Court conducted the statutorily required screening and, on August 25, 2025, issued an MOSC that set out the relevant screening standards and explained that Plaintiff's requests for release, reversal of his convictions or entry of a judgment of acquittal, money damages for pain and suffering, the expungement of his criminal record, and 40 acres of land are subject to dismissal. (Doc. 18, p. 5-6.) The MOSC also explained that the WCSD is subject to dismissal because it "is not an entity that may be sued under 42 U.S.C. § 1983" and the Unified Government is subject to dismissal because even when the factual allegations in the complaint are liberally construed and taken as true, they do not "show that a Unified Government employee committed a constitutional violation and that a Unified Government policy or custom was 'the moving force' behind the constitutional violation." *Id.* at 6-7 (citations omitted).

Next, the MOSC informed Plaintiff that all of his claims that are based on his arrest, detention, and criminal prosecution are subject to dismissal because they appear to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which prohibits prisoners from bringing § 1983 claims that call into question the lawfulness of their convictions unless the conviction has been

5

invalidated. (Doc. 18, p. 7-8.) Finally, the MOSC explained that the claims against Defendant Nix that were not barred by *Heck* failed to state a plausible claim against her because Plaintiff failed to allege facts that, if taken as true, show that Defendant Nix violated Plaintiff's federally protected rights. *Id.* at 8-11. The MOSC granted Plaintiff time in which to show cause why this matter should not be dismissed for these reasons. *Id.* at 12-13.

### III. Plaintiff's Motions and Response to the MOSC

Shortly after the MOSC was issued, Plaintiff filed a "Motion to Invalidate Conviction" in which he argued that his convictions are invalid because his constitutional rights were violated during the events leading to his arrest and the subsequent criminal prosecution. (Doc. 19.) This Court promptly denied the motion, explaining that it cannot invalidate Plaintiff's state-court convictions by way of an order entered in this § 1983 action. (Doc. 21.)

Plaintiff then filed a "Motion to Amend or Modify the Amount Requested to 750 Million U.S.D." seeking to amend the amount of pain and suffering damages he seeks in this matter from $50,000,000.00 to $750,000,000.00. (Doc. 23; Doc. 1, p. 6 (seeking "50 million U.S.D. w/ 50 million in pain [and] suffering along w/ restitution (TBD) [and] all lost wages [*sic*]").) Plaintiff states in the motion that if the Court is inclined to deny the amendment, he would like to withdraw this case so that he may "file another suit [without] any penalty or penalizations or the like in doing so against defendants mentioned in [this] current suit." (Doc. 23.) The Court reserved ruling on this motion until its ruling on the issues identified in the MOSC. (Doc. 24.)

On September 18, 2025, Plaintiff filed a motion for relief from judgment under Rule 60(b) in which he asks this Court to grant him relief from the judgment of the state court in his criminal case. (Doc. 25.) The same day, he filed a response to the MOSC. (Doc. 26.) Plaintiff's arguments in the response and his motions are addressed below.

6

**IV. Discussion**

In his response, Plaintiff first addressed some personal matters[1] and then turned to the MOSC. He expressly agrees with the findings in the MOSC that his requests for release, pain and suffering damages, expungement of his criminal record, and 40 acres of land are subject to dismissal. (Doc. 26, p. 2.) He also requests that Defendant Nix be dismissed from this matter and he appears to agree that the WCSD should be dismissed because it is not an entity that can be sued under § 1983. *Id.* at 2 (stating that Plaintiff is "in agree[a]nce" that the WCSD cannot be sued under § 1983); 4 ("I am requesting Officer Nix to be removed as a defendant in this matter."). As to the Unified Government, however, Plaintiff asserts that he can show municipal liability. (Doc. 26, p. 4.) He also repeats his request for appointment of counsel. *Id.* at 3.

In light of Plaintiff's statements in his response agreeing with the MOSC, the Court concludes that Defendant Nix, the WCSD, and Plaintiff's requests for release, pain and suffering damages, expungement, and land will be dismissed and need not be discussed further in this order. That leaves the Unified Government as the sole remaining Defendant in this matter. The MOSC explained that the Unified Government is subject to dismissal because even when the factual allegations in the complaint are liberally construed and taken as true, they do not "show that a Unified Government employee committed a constitutional violation and that a Unified Government policy or custom was 'the moving force' behind the constitutional violation." (*See* Doc. 18, p. 7 (citation omitted).)

In his response, Plaintiff addresses the Court's statement that *Heck* prevents him from bringing claims in this matter that would call into question the lawfulness of his convictions before his convictions have been invalidated. (Doc. 26, p. 4.) He points the Court to his pending motion

---

[1] The Court assures Plaintiff that it has taken into consideration his statements regarding his mental health and his grief over the loss of his son, which the Court will not discuss further out of respect for Plaintiff's privacy.

for relief under Federal Rule of Civil Procedure 60, located at Doc. 25. *Id.* In that motion, Plaintiff asks the Court to grant him relief from the journal entry of judgment entered in his state criminal case that memorialized his convictions and sentences. (Doc. 25.)

As previously explained when the Court denied Plaintiff's motion to invalidate his convictions (Doc. 21) in this case, *Heck* expressly stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87. (*See also* Doc. 21, p. 2.) *Heck* does not contemplate a federal court presiding over a civil rights action granting relief from a state-court conviction or sentence. "To be clear, the Court cannot invalidate Plaintiff's convictions via an order in this § 1983 action." (Doc. 21, p. 2.)

"Rule 60(b) is not a mechanism for relief from state court judgments." *Saul v. U.S. Bank Natl. Assoc.*, 2024 WL 2804055, *1 (D. N.M. May 31, 2024) (unpublished). As the Tenth Circuit recognized in an unpublished opinion, cited here for its persuasive value, Rule 60(b)(4) "is a rule of civil procedure and thus not available to challenge criminal judgments, nor may it be used to challenge state judgments of any sort in federal court." *Sheratt v. Friel*, 275 Fed. Appx. 763, 766 n.1 (10th Cir. 2008) (unpublished); *see also Harris v. Janway*, 2024 WL 3901394, * (D. N.M. Aug. 22, 2024) (unpublished) (citing *Sheratt* for its persuasive value and denying Rule 60(b)(4) motion for relief from state court criminal judgment). Generally speaking, pro se motions that are titled as Rule 60(b) motions and seek relief from a state-court criminal judgment are construed as petitions for habeas relief under 28 U.S.C. § 2254. *See Gray v. Bridges*, 2024 WL 2747573, *2 (10th Cir. May 29, 2024) (unpublished) (finding that a Rule 60(b) motion that argued a state criminal judgment was void "is in fact a § 2254 petition").

The Court could liberally construe the Rule 60(b) motion filed in this case as a petition for federal habeas relief and direct the Clerk to file it as a petition in a new case. It declines to do so, however, in light of the fact that Plaintiff has already brought a § 2254 action in this Court seeking federal habeas relief from these convictions; that action was dismissed without prejudice two weeks ago for failure to exhaust. *See Hamilton v. Geither*, Case No. 25-3126. The dismissal order noted in part that Plaintiff had voluntarily dismissed the direct appeal of his convictions—which was pending in the Kansas Court of Appeals—in June 2025. *See id.* at Doc. 20, p. 4-5. If the Court liberally construed the Rule 60 motion filed in this civil rights action as a petition for relief under § 2254 and order it filed as a petition initiating a new habeas action, that habeas action would be similarly subject to dismissal for failure to exhaust. Thus, the Court declines to so construe the motion and will instead deny it because Rule 60(b) does not provide an avenue for state prisoners to obtain relief from state-court criminal judgments. If Plaintiff wishes to seek federal habeas relief, he may do so in a separately filed action, which will be subject to the exhaustion requirements explained to him in his previous federal habeas case.

Returning to Plaintiff's response to the MOSC in this case, Plaintiff generally cites to *Parratt v. Taylor*; 451 U.S. 527 (1981); *Daniels v. Williams*, 474 U.S. 327 (1986); *United States v. Williams*, 341 U.S. 70 (1951); and *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). (Doc. 26, p. 3.) Neither *Parratt*, *Daniels*, nor *Williams* are obviously relevant to the issues identified in the MOSC and Plaintiff does not explain their relevance. Although the Court has read each of these opinions and it liberally construes Plaintiff's pro se response to the MOSC, it will not construct a legal theory or argument on Plaintiff's behalf. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Thus, these cases will not be discussed further.[2]

---

[2] Plaintiff also summarily requests the appointment of counsel. (Doc. 26, p. 3-4.) The Court has previously denied a motion to appoint counsel in this matter. (Doc. 18, p. 12-13.) It denied that motion "without prejudice to refiling if

9

Plaintiff cites *City of Canton, Ohio* for its holdings on municipal liability under 42 U.S.C. § 1983 for failure to train a police force. (Doc. 26, p. 6.) That case arose from the failure by police officers to summon medical attention for arrestee Geraldine Harris, who became incoherent and collapsed twice in the police station. *City of Canton, Ohio*, 489 U.S. at 381. Mrs. Harris later brought suit, claiming in part that the city was liable under § 1983 for violating her "right, under the Due Process Clause of the Fourteenth Amendment, to receive necessary medical attention while in police custody." *Id.* During the jury trial, evidence was admitted showing a municipal regulation that authorized shift commanders to discretionarily determine whether a detainee required medical attention but that shift commanders were not given any specialized training on how to determine "when to summon medical care for an injured detainee." *Id.* at 381-82.

The jury found the city liable on Mrs. Harris' medical-treatment claim and the Sixth Circuit Court of Appeals found that a municipality could be liable where its "'lack of training was so reckless or grossly negligent that deprivations of person's constitutional rights were substantially certain to result.'" *Id.* at 382-83. After granting the city's petition for writ of certiorari, the United States Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. It further explained:

> Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice Brennan's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S. Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. See also *Oklahoma City v. Tuttle,* 471 U.S., at 823, 105 S. Ct., at 2436 (opinion of Rehnquist, J.). Only where a failure to train

---

this matter survives screening." *Id.* at 13. After considering the relevant factors, *see id.* at 12-13, the Court again concludes that it is not appropriate to ask whether an attorney will volunteer to represent Plaintiff at no cost. Thus, the request for counsel is denied.

> reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*City of Canton, Ohio*, 489 U.S. at 389.

Relying on *City of Canton*, Plaintiff argues that he has stated a plausible claim against the Unified Government based on the theory that its policy or custom caused the alleged constitutional deprivation. (Doc. 26, p. 4-7.) Plaintiff identifies the custom or policy as the Unified Government's failure to have a bailiff inside the courtroom or a security officer outside the courtrooms of the Wyandotte County Courthouse "to perform the task of separating" litigants such as Plaintiff and Mr. Davis. *Id.* at 5. As Plaintiff states, the United States Supreme Court held that "our first inquiry in any case alleging municipal liability under § 1983 is whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio*, 489 U.S. at 386; (Doc. 26, p. 4-5.)

This is where Plaintiff's argument fails. In *City of Canton*, the alleged constitutional deprivation was clear: the "violation of Mrs. Harris' right, under the Due Process Clause of the Fourteenth Amendment, to receive necessary medical attention while in police custody." 489 U.S. at 381. The United States Supreme Court has long recognized pretrial detainees' constitutional right to medical care. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) ("The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police.").

In contrast, the constitutional deprivation Plaintiff asserts in the case now before this Court is the violation of an alleged right to be safe inside a courthouse. (*See* Doc. 26, p. 6-8.) Plaintiff first asserted this right in his complaint and the attachments thereto. (Docs. 1 and 1-1.) But in the MOSC, the Court discussed the legal authority Plaintiff had relied upon to show that this right exists and explained why it was not persuasive. (Doc. 18, p. 8-10.) The MOSC concluded:

11

> Plaintiff has provided no legal authority that reflects that a courthouse security officer . . . has an affirmative duty to separate litigants coming from a courtroom or to prevent a litigant—even one who is verbally threatened and "stared down" by an opposing litigant, as Plaintiff contends—from physically attacking an opposing party. Put another way, Plaintiff has failed to show that he had a constitutional right to be stopped from hitting Mr. Davis.

(Doc. 18, p. 11.)

Even taking all of the alleged facts in Plaintiff's complaint, response to the MOSC, and other filings as true and liberally construing them, Plaintiff has not shown that he had a constitutional right to be safe in the courthouse[3] that required court security officers to proactively separate Plaintiff and Mr. Davis in the courtroom or on their way out of the courthouse. Thus, his allegations that the Unified Government is liable under § 1983 due to its failure to train court security officers and ensure this right was protected must fail. The Court finds that Plaintiff has failed to show cause why the Unified Government should not be dismissed from this action because Plaintiff has failed to state a plausible claim for relief against it. With the dismissal of the Unified Government, all Defendants are dismissed and the case will be dismissed in this entirety.

Because this case will be dismissed, Plaintiff's motion to amend the amount of damages he seeks (Doc. 23) will be denied as moot. The Court recognizes that in the motion to amend, Plaintiff asked the Court, if it were inclined to deny the motion, to allow him to withdraw this case. (Doc. 23.) The Court liberally construes this request as seeking permission to voluntarily dismiss this matter if the Court will not allow Plaintiff to amend the amount of damages he seeks. The request for voluntarily dismissal is denied. The Court has expended considerable time and effort

---

[3] To the extent that Plaintiff argues that Mr. Davis' death and/or the death of Plaintiff's son are a result of the violation of *their* alleged constitutional right to be safe in a courthouse (Doc. 26, p. 7-8), Plaintiff lacks standing to bring such claims. It is well-settled that a § 1983 claim must be based on the violation of the plaintiff's personal rights and not the rights of someone else. *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1999). To have standing to bring a claim under § 1983, a prisoner must allege "specific facts connecting the allegedly unconstitutional conditions with his own experiences, or indicat[e] how the conditions caused him injury." *Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993).

in screening this matter and finds that Plaintiff has failed to state a plausible claim for relief. As this Court has previously held in other cases, a plaintiff whose case has been screened and found subject to dismissal may be prevented from voluntarily dismissing that case and thereby avoiding the consequences of a dismissal for failure to state a claim on which relief can be granted. *See Schlobohm v. Ash*, 2025 WL 306109, at *1 (D. Kan. 2025); 28 U.S.C. § 1915(g).

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion for Relief from Judgment (**Doc. 25**) is **denied.**

**IT IS FURTHER ORDERED** that this matter is **dismissed** for failure to state a plausible claim on which relief can be granted. To the extent that Plaintiff's claims in this matter are barred by *Heck*, they are dismissed without prejudice. All other claims in this matter are dismissed with prejudice. Because the case is dismissed in its entirety, the motion to amend the amount of damages requested (**Doc. 23**) is **denied as moot.**

**IT IS SO ORDERED**.

**Dated this 24th day of September, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**